The FEDERAL LAND BANK OF WICHITA, now known as the Farm Credit Bank of Wichita, Plaintiff–Appellee,

v.

B.A.V., INC., a Colorado Corporation, Alfred D. Potestio, Bert Potestio and All Occupants of the Property, Defendants–Appellants.

No. 90CA0173.

Colorado Court of Appeals,
Div. II.

March 14, 1991.

Rider & Woulf, P.C., Jeffrey O. McAnallen, Colorado Springs, for plaintiff-appellee.

Joseph A. Hambright, Grand Junction, for defendants-appellants.

Opinion by Judge JONES.

Defendants, B.A.V., Inc., Alfred D. Potestio, and Bert Potestio, appeal the judgment of the district court requiring restitution of a certain piece of real property to plaintiff, Federal Land Bank of Wichita, now known as the Farm Credit Bank of Wichita, and requiring defendants to pay rent due and owing in the amount of $23,-933, as well as reasonable attorney fees and court costs. We affirm.

Plaintiff acquired title to the real property which is the subject matter of this action by foreclosure in a separate lawsuit involving these same parties and others. Thereafter, defendant B.A.V., Inc., commenced a lawsuit which resulted in a settlement whereby, in April 1988, plaintiff leased the real property to that defendant for a term from March 1, 1988, to and including February 15, 1989.

In December 1988, plaintiff informed B.A.V., Inc., that the lease would not be renewed. The stated reason for the decision was that defendants had violated the lease and that plaintiff wished to "custom farm" the property in the future.

Thereafter, both the corporate and individual defendants failed to vacate the premises, continuing to occupy the property on and after February 15, 1989. Plaintiff filed an unlawful detainer action, and after trial, in which the individual defendants appeared *pro se*, the trial court entered judgment in favor of plaintiff and against all of the defendants, jointly and severally.

I.

Defendants first contend that the trial court abused its discretion in allowing the withdrawal of their attorney at the commencement of the trial. We disagree.

■ Generally, whether an attorney should be permitted to withdraw from a general appearance on behalf of a litigant in a civil action is within the discretion of the trial court. *Sobol v. District Court*, 619 P.2d 765 (Colo.1980); C.R.C.P. 121 § 1–1(2). However, we do not consider the propriety of the court's exercise of its discretion here because we conclude that defendants invited the court's actions in permitting their attorney to withdraw.

Defendants' claims that the trial court's order hindered their ability to prepare for trial is belied by their actions leading up to trial. Immediately after their attorney initially moved to withdraw, defendants went

to his office and reclaimed all records associated with the case. Even after the attorney was reinstated as their counsel on January 4, 1990, at plaintiff's insistence, defendants refused to allow him access to records and, instead, continued to seek other counsel to represent them at trial. Had the trial court not reinstated the attorney, the actions of defendants and their ability to prepare would have been no different than they were in this case.

Finally, we note that on the first day of trial, defendants vigorously reiterated their pleas that the trial court allow the attorney to withdraw, claiming that they were dissatisfied with his services. Indeed, the attorney noted that defendants had refused to return any records to him and that under such circumstances "they could do a better job than I can because they have access to their files and their facts."

Under such circumstances, defendants cannot, on appeal, successfully assert that the trial court abused its discretion in permitting the attorney to withdraw. A party cannot assert error in actions it induced the trial court to perform. *See Jacobs v. Commonwealth Highland Theatres, Inc.*, 738 P.2d 6 (Colo.App.1986).

## II.

Defendants next contend that the trial court erred in denying their motion for a continuance. Again, we disagree.

The decision to grant or deny continuances lies within the sound discretion of the trial court and will not be set aside on appeal absent a clear abuse of discretion. *Butler v. Farner*, 704 P.2d 853 (Colo.1985).

In determining whether to grant a continuance, the court should consider the circumstances of the particular case, weighing the right of the party requesting the continuance to a fair hearing against the prejudice that may result from the delay. *Butler v. Farner, supra.*

Here, in its order denying defendants' motion, the trial court specifically found that defendants had used various methods to prevent the case from proceeding to trial and later found that defendants

had not used due diligence in attempting to obtain counsel and should have been prepared to go to trial.

Finally, the record establishes that in reaching its decision, the trial court considered the statutory requirement that forcible entry and detainer actions such as this are to be tried as expeditiously as possible.

Thus, we conclude that, given the above considerations, the trial court did not abuse its discretion in denying defendants' motion for continuance.

## III.

Defendants next contend that the trial court erred in holding that they have no private right of action pursuant to 12 U.S.C. § 2219a(c)(1) (1988) which provides previous owners with a right of first refusal if an institution in the Farm Credit System elects to lease acquired real estate. We conclude that, even if we assume *arguendo* that such right does exist, defendants are not entitled to relief under the statute.

The right of first refusal provided in 12 U.S.C. § 2219a(c)(1) is triggered only if an institution of the Farm Credit System, such as plaintiff, "elects to lease [the] acquired real estate." *See Meredith v. Federal Land Bank Ass'n*, 690 F.Supp. 786 (E.D. Ark.1988).

Here, there is no evidence that plaintiff intended to lease the disputed land. Instead, the record reflects that plaintiff elected not to lease the land, but rather to hold it and custom farm it until it could be sold. Defendants were informed of this decision in a letter in which plaintiff's representative stated:

"[I]t has been determined not to lease the said premises for the 1989 crop year. We have determined to custom farm the said premises for the 1989 crop year. We have found that custom farming operations are more beneficial to the bank than individual lease agreements."

"Custom farming" has been defined as "the work or occupation of one who performs for others some particular phase or

phases of farm work such as 'breaking' the land and planting the seeds or cultivating and harvesting the crops." *Givens v. Southern Farm Bureau Casualty Insurance Co.*, 197 So.2d 380 (La.Ct.App.1967). Thus, custom farming generally involves an employee or independent contracting relationship with the owner, as needed, for all or part of the operation of a farm as opposed to the leasing of a farm.

Here, plaintiff's assistant vice president testified as follows:

"[W]hat we typically do is get an area farmer to ... use his equipment and charge us a per-acre fee to control the weeds, just keep it maintained, so it doesn't become a distraction to the community.... Basically, we can fire him any day if we can get a contract to purchase, so we don't have to make our contract subject to a lease or anything like that. So it's a way of just keeping the property farmed without encumbering it for a sale."

"Q So he's an employee?

"A Yes....

"Q As opposed to leasing?

"A As opposed to leasing. So we suffer the risk. We give him all the money to operate on, or reimburse him, and at the same time, if we decide to plant crops, we also suffer the environmental risks of a hail storm or something wiping us out. All of the money put into a custom farming operation is actually Farm Credit money."

Custom farming has been held not to constitute a lease within the meaning of 12 U.S.C. § 2219a(c)(1). *Griffin v. Federal Land Bank*, 708 F.Supp. 313 (D.Kan.1989), aff'd on other grounds, 902 F.2d 22 (10th Cir.1990). The *Griffin* court noted the "obvious differences between a lease and custom farming" and the fact that the Act referred only to leases. Under such circumstances, the court refused to "sit as a legislative body and treat custom farming agreements as leases" for purposes of the Act. We agree with and adopt the reasoning of the *Griffin* court. Thus, plaintiff was under no statutory obligation to offer defendants a right to lease the property.

## IV.

Finally, defendants Alfred D. Potestio and Bert Potestio contend that because they did not sign the lease with plaintiff, the trial court erred in entering judgment against them individually. We disagree.

Plaintiff initiated this wrongful detainer action on March 6, 1989, a full eighteen days after the expiration of the lease signed by defendant B.A.V., Inc. This allowed the action to be directed not only at B.A.V., Inc., as lessee, but also at the Potestios as individual defendants as well as "all occupants of the property." Moreover, in their amended answer and counterclaim dated April 6, 1989, defendants admitted a portion of plaintiff's complaint which states that: *"Defendants* have refused to relinquish possession of the premises...." (emphasis added) Thus, we perceive no error in the trial court's entry of judgment against the individual defendants for the period of time defendants occupied the property after the lease expired.

We have considered defendants' other contentions and find them to be without merit.

The judgment is affirmed.

SMITH and RULAND, JJ., concur.